IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORA T. SALEEBA, | : | 3:12-cv-1324 |
| | : | |
| Plaintiff, | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| CAROLYN COLVIN, | : | |
| Acting Commissioner of the Social | : | |
| Security Administration, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM

**March 27, 2014**

In the above-captioned action, Plaintiff seeks review of a decision of the

Commissioner of Social Security denying her application for disability and

disability insurance benefits.  For the reasons that follow, we shall vacate the

decision of the Commissioner and remand for further proceedings.

## I.   BACKGROUND

On March 20, 2009, Plaintiff filed an application for a period of disability

and disability insurance benefits, alleging a disability beginning on July 17, 2008.

(Tr. 31).[1]  Her claim was denied, and, thereafter, Plaintiff requested a hearing

---

[1]  Citations to "Tr. ___" are to pages of the administrative record filed by Defendant as
part of the Answer on September 28, 2012.  (Doc. 7).

1

before an Administrative Law Judge ("ALJ").  (Tr. 31).  An ALJ conducted a

hearing on July 7, 2010, at which Plaintiff and an impartial vocational expert

("VE") testified.  (Tr. 31).  The ALJ issued his decision on September 22, 2010,

determining that Plaintiff was not under a disability for the relevant period.  (Tr.

38).

In rendering his decision, the ALJ utilized a five-step sequential evaluation

process requiring him to consider whether a claimant:  (1) is engaging in

substantial gainful activity;[2] (2) has an impairment that is severe or a combination

of impairments that is severe;[3] (3) has an impairment or combination of

impairments that meets or equals the requirements of a listed impairment;[4] (4) has

-----

[2]  If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further.  Substantial gainful activity is work that "involves doing significant physical or mental activities" and is "done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572.

[3]  The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 404.1520(a)(4)(ii).  If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities (*i.e.*, the abilities and aptitudes necessary to do most jobs), the claimant is "not disabled" and the evaluation process is complete. 20 C.F.R. § 404.1520(c); *id.* § 404.1521(b).  If a claimant has any severe impairments, the evaluation process continues.

[4]  Disabling impairments are listed at 20 C.F.R. Part 404, Subpart P, Appendix 1.  If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, and meets the duration requirement, the claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

the residual functional capacity ("RFC") to return to her past work;[5] and, (5) if not,

whether she can perform other work in the national economy. *See* 20 C.F.R. §

404.1520; *Poulos v. Comm'r of Soc. Sec.,* 474 F.3d 88, 91-92 (3d Cir. 2007).

Residual functional capacity, determined at step four of the sequential

evaluation, is the individual's maximum remaining ability to do sustained work

activities in an ordinary work setting on a regular and continuing basis.  *See* Social

Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996).  A regular and

continuing basis contemplates full-time employment and is defined as eight hours a

day, five days per week or a similar work schedule.  *See id.*  The RFC assessment

considers the limiting effects of all of a claimant's impairments, including those

that are not severe, *see* 20 C.F.R. §  404.1545(e), and must include a discussion of

the individual's abilities, *see* SSR 96-8p; *see also Hartranft v. Apfel,* 181 F.3d 358,

359 n.1 (3d Cir. 1999) ("'Residual functional capacity' is defined as that which an

individual is still able to do despite the limitations caused by his or her

impairment(s).").

Here, as a preliminary matter, the ALJ determined that Plaintiff met the

insured status requirement to receive disability insurance benefits through

--------

[5]  If the claimant has the residual functional capacity to do his or her past relevant work,
the claimant is not disabled.  *See* 20 C.F.R. § 404.1520(a)(4)(iv).

3

December 31, 2013.  *See* 42 U.S.C. § 423.  As to step one of the sequential evaluation process, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 17, 2008, the alleged onset date.  (Tr. 33).  However, Plaintiff had testified that, at the time of the hearing, she was receiving unemployment compensation benefits and that she was seeking employment. (Tr. 59-60, 62).  The ALJ noted that, by the receipt of unemployment compensation, a claimant certifies that she is able and available to work.  (Tr. 33); *see* 43 P.S. § 801(d)(1).

Next, the ALJ determined that Plaintiff has the following severe impairments: bilateral hearing loss, partially corrected with hearing aids; fibromyalgia; degenerative joint disease of the knees; and arthritis.  (Tr. 33).  In addition, the ALJ noted that Plaintiff had alleged limitations in her ability to work due to vertigo, migraine headaches, optic affect vision, and a speech impairment (Tr. 133), and also a "brief memory [loss] issue" (Tr. 66).  However, the ALJ observed that no medical evidence demonstrated treatment of these conditions, and thus that the alleged impairments were non-medically determinable and non-severe.  (Tr. 33).

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed

impairments. (Tr. 34). The ALJ noted that he considered, *inter alia*, the criteria of listing 1.00 (Musculoskeletal System) and 2.00 (Special Senses and Speech), with specific consideration to listing 2.10 (Hearing Loss Not Treated with Cochlear Implantation). (Tr. 34).

At step four, regarding Plaintiff's RFC, the ALJ determined that Plaintiff can perform "sedentary work" as defined by 20 C.F.R. § 404.1567(a) with some qualifications. (Tr. 34). He specifically indicated that Plaintiff has the ability to perform work that requires lifting or carrying no more than 10 pounds occasionally and 2-3 pounds frequently, allows for alternation between sitting and standing every 15-20 minutes, does not necessitate walking more than the equivalent of a block at a time, and accommodates Plaintiff's difficulty using telephonic headsets (which do not work properly with her hearing aids). (Tr. 34).

In light of the RFC assessment, the ALJ determined that Plaintiff was unable to perform her past relevant work as a lab assistant. His finding was based on her hearing limitation and also the VE's testimony that the job of lab assistant requires light exertion, while Plaintiff is restrained to sedentary work.

Finally, at step five, the ALJ found that Plaintiff was able to perform other jobs that exist in significant numbers in the national economy. In rendering this assessment, the ALJ considered Plaintiff's RFC and her vocational factors, stating

that Plaintiff (born June 7, 1975) was 33 years-old on her alleged disability onset date and possesses at least a high school education and ability to communicate in English.  (Tr. 37).  Based on the VE's testimony, the ALJ found that Plaintiff could perform the requirements of such jobs as assembler of small parts, cashier II, and garment inspector.  Ultimately, the ALJ declared that Plaintiff has not been under a disability from July 17, 2008, through the date of the decision.

On November 2, 2010, Plaintiff filed a request for review of the ALJ's decision.  (Tr. 17).  On May 14, 2012, the Appeals Council denied the request (Tr. 1), making the ALJ's decision the final decision of the Commissioner.

Thereafter, on July 9, 2012, Plaintiff commenced the present action by filing a Complaint (Doc. 1), seeking review of the ALJ's decision.  Defendant filed an Answer on September 28, 2012 (Doc. 6), and, on the same day, the administrative record was submitted (Doc. 7).  Plaintiff filed a brief on December 7, 2012 (Doc. 10), and, after being granted extensions, Defendant filed a brief on March 12, 2013 (Doc. 15).  Accordingly, this matter is ripe for our review.[6]

## II.   STANDARD OF REVIEW

When considering a social security appeal, we have plenary review of all

---

[6] This case was reassigned to the undersigned by way of verbal order on November 20, 2013.

legal issues decided by the Commissioner.  *See Poulos,* 474 F.3d at 91; *Schaudeck v. Comm'r of Soc. Sec. Admin.,*  181 F.3d 429, 431 (3d Cir. 1999); *Krysztoforski v. Chater,* 55 F.3d 857, 858 (3d Cir. 1995).  However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." *Poulos*, 474 F.3d at 91*; Brown v. Bowen,* 845 F.2d 1211, 1213 (3d Cir. 1988); *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993).  Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. § 405(g); *Fargnoli v. Massanari,* 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); *Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir. 1981) ("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence.");  *Keefe v. Shalala,* 71 F.3d 1060, 1062 (2d Cir. 1995); *Mastro v. Apfel,* 270 F.3d 171, 176 (4th Cir. 2001); *Martin v. Sullivan,* 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood,* 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938));

*Johnson v. Commissioner of Social Security,* 529 F.3d 198, 200 (3d Cir. 2008);

*Hartranft v. Apfel,* 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence has

been described as more than a mere scintilla of evidence but less than a

preponderance.  *See Brown,* 845 F.2d at 1213.  In an adequately developed factual

record, substantial evidence may be "something less than the weight of the

evidence, and the possibility of drawing two inconsistent conclusions from the

evidence does not prevent an administrative agency's finding from being supported

by substantial evidence." *Consolo v. Federal Maritime Commission,* 383 U.S. 607,

620 (1966).  Substantial evidence exists only "in relationship to all the other

evidence in the record," *Cotter,* 642 F.2d at 706, and "must take into account

whatever in the record fairly detracts from its weight."  *Universal Camera Corp. v.

N.L.R.B.,* 340 U.S. 474, 488 (1971).  A single piece of evidence is not substantial

evidence if the Commissioner ignores countervailing evidence or fails to resolve a

conflict created by the evidence.  *See Mason,* 994 F.2d at 1064.  The

Commissioner must indicate which evidence was accepted, which evidence was

rejected, and the reasons for rejecting certain evidence. *See Johnson,* 529 F.3d at

203; *Cotter,* 642 F.2d at 706-707.  Therefore, a court reviewing the decision of the

Commissioner must scrutinize the record as a whole.  *See Smith v. Califano,* 637

F.2d 968, 970 (3d Cir. 1981); *Dobrowolsky v. Califano,* 606 F.2d 403, 407 (3d Cir.

1979).

## III.   DISCUSSION

Here, Plaintiff argues that the ALJ erroneously:  failed to elicit a valid waiver of counsel and, also, neglected his heightened duty to assist a *pro se* claimant; credited certain medical evidence; relied upon flawed vocational testimony; and inadequately explained his credibility determination as to Plaintiff. We will address each challenge in turn.

### A.   Waiver of Counsel and Duty to *Pro Se* Claimant

In her first contention, Plaintiff asserts that her waiver of counsel was not knowing and intelligent and, additionally, that the ALJ failed to meet the heightened duty of care required where a disability-benefits claimant is unrepresented.

A claimant has a statutory and regulatory right to counsel at a social security disability hearing.  *See Vivaritas v. Comm'r of Soc. Sec.*, 264 Fed.Appx. 155, 158 (3d Cir. 2008).  However, she may waive her right to representation where she has received notice of her right and waiver is knowing and intelligent.  *See Cole v. SSA*, No. 07-cv-5259, 2008 WL 5157919, at *5 (E.D. Pa. Dec. 9, 2008).  In such case, lack of representation, of itself, does not present a reason for remand.  *See Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir. 1980) (citing *Hess v. Secretary*

*of HEW*, 497 F.2d 837, 840 n.4 (3d Cir. 1974)).  Furthermore, an ALJ owes a *pro se* claimant a heightened duty to develop the administrative record.  The Third Circuit has stated that an ALJ should "assume a more active role when the claimant is unrepresented," *Livingston*, 614 F.2d at 345 (3d Cir. 1980) (internal quotation marks omitted), and must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003) (citation and internal quotation marks omitted).  Where "it is clear that the lack of counsel prejudiced the claimant or that the administrative proceeding was marked by unfairness due to the lack of counsel," the matter should be remanded.  *Livingston*, 614 F.2d at 345.

    As to waiver of counsel, Plaintiff appeared to indicate at the administrative hearing that she had not received or reviewed the Notice of Hearing and the accompanying information regarding the right to representation.  (Tr. 57).  She explained that, due to family issues at home, much of her mail had been forwarded to a friend, and that she had only learned of the administrative hearing the day before.  (Tr. 57).  She stated that she did not have any paperwork in her possession that day.  (Tr. 57).  At that point, the ALJ addressed Plaintiff as follows: "If someone would like to have . . . an attorney or a non-attorney representative assisting them, they have that . . . right.  But, do you feel comfortable going

through today's hearing by yourself?  Would you like some time to find a representative[?]" (Tr. 57-58).  Plaintiff answered, "No, I'm fine, I believe."  (Tr. 58).

We conclude that Plaintiff received adequate notice of her right to counsel and knowingly waived that right.  Even if she did not have the opportunity to review the notice-of-hearing documents, she had been informed previously of her right to representation via letter from the Social Security Administration, dated August 12, 2009, explaining the administrative hearing process.  (Tr. 94).  That letter notified Plaintiff that she had the right to be represented by a lawyer or other person and that a representative could help her obtain evidence, prepare for the administrative hearing, and present her case.  (Tr. 94).  The letter further stated that some lawyers may provide free representation and that a list of groups that can assist in finding a representative was enclosed.  (Tr. 94-95).  Morever, as noted, the ALJ explained to Plaintiff at the hearing that she had the right to representation and asked Plaintiff whether she needed more time to obtain a representative.  (Tr. 57-58).[7]  Accordingly, and in view of Plaintiff's education and absence of intellectual

_____

[7] As an aside, we note that some Circuits have imposed certain requirements on ALJs in explaining the right to representation at an administrative hearing.  *See*, *e.g.*, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) ("To ensure valid waivers, ALJs must explain to pro se claimants (1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees."  (citation and internal quotation

or emotional infirmity, the ALJ could accept Plaintiff's decision to represent herself as an effective waiver of her right to counsel.

Turning to whether the ALJ met his heightened duty to develop the administrative record, as a preliminary observation, the transcript of the administrative hearing is 30 pages long and indicates that the hearing lasted for approximately 50 minutes.  (Tr. 54-83).  At the hearing, the ALJ elicited testimony regarding the severity of Plaintiff's hearing loss and resulting functional limitations, including difficulty using telephonic headsets.  (Tr. 60-62).  At the time of the hearing, Plaintiff's file contained no medical records indicating that she was experiencing health problems in addition to her hearing loss.  (Tr. 64).  Upon learning that Plaintiff suffered from additional impairments, such as fibromyalgia, arthritis, and knee pain, the ALJ requested the names of Plaintiff's treating physicians and later obtained the relevant records.  (Tr. 65, 67).

As to the development of Plaintiff's testimony at the administrative hearing, Plaintiff testified that she suffers from fibromyalgia and that the medication for it makes her nauseous and has caused her "some brief memory issue[s]."  (Tr. 66).  She stated that arthritis effects her back and neck and, in terms of treatment, that

---

marks omitted)).  The Third Circuit, however, has not established a specific colloquy or standard. *See Vivaritas*, 264 Fed. Appx. at 157 n.1.

she has participated in physical therapy and aqua therapy. (Tr. 67). She testified that she does not have any cartilage in her knees and receives injections every six months. (Tr. 64, 67). She stated that the injections are helpful for a short period of time but that she wishes she could receive them more frequently, noting that her knees "sound like Rice Krispies" when she walks. (Tr. 68).

The ALJ questioned Plaintiff regarding her specific functional limitations, and Plaintiff expressed that she was in pain after walking from the parking lot to the hearing location, estimating that she would be capable of walking one to two blocks at a time. (Tr. 68). She stated that should could stand for 15-20 minutes and sit for about 20 minutes. (Tr. 68). As to lifting and carrying, she stated that she could lift between five and 10 pounds, but that even 5 pounds was sometimes difficult during physical therapy. (Tr. 70). Plaintiff noted that she experienced back spasms but that she tried to refrain from taking the prescribed medication because it makes her feel "a little disoriented." (Tr. 69).

In describing her typical daily activities, Plaintiff stated that she wakes up around 10:30 a.m. and does household chores, like "a little bit of laundry." (Tr. 69). She noted that she has difficulty carrying laundry downstairs and asks her husband to carry the basket for her. (Tr. 70). She also drives her son to his activities and appointments, and, otherwise, does "what needs to be done" around

the house. (Tr. 69-70).  She stated that her husband does the grocery shopping but that they share cooking responsibilities, although she noted that she sits during some of the meal preparation.  (Tr. 72).  She does not garden "because it's difficult to bend down and squat."  (Tr. 73).  She stated that she no longer attends physical therapy because she had exhausted her insurance coverage (Tr. 70), but that she does some stretching and exercise at home (Tr. 72).  She also does aqua exercises in her heated pool.  (Tr. 73).

Furthermore, after the hearing, the record reflects that the ALJ procured medical evidence from Hazelton Radiology Associates (MRI of right knee) (Tr. 197-201); Hazelton Physical Therapy (therapy records) (Tr. 202-10); Dr. Terence Duffy, M.D. (EMG/NCV Studies) (Tr. 211-16); Dr. V. Benjamin Nakkache, M.D. (evaluation of back pain) (Tr. 217-18); Dr. Mark N. Perlmutter, M.D. (office visits and radiology) (Tr. 219-250); and Dr. Martin Blidner, M.D. (office visits and laboratory results) (Tr. 251-60).

In view of the testimony elicited at the administrative hearing and the medical evidence later obtained, we find that the ALJ sufficiently developed the record in this case.  As outlined above, Plaintiff testified regarding her medical conditions and treatment, functional limitations, and daily activities.  Moreover and notably, the ALJ further developed the record by gathering medical records

regarding the impairments that Plaintiff first raised at the hearing.  *Cf. Reefer*, 326 F.3d at 380 (ALJ did not sufficiently develop the administrative record where, *inter alia*, he did not procure medical records pertaining to an impairment raised during a *pro se* plaintiff's testimony); *Comiskey v. Astrue*, No. 09-0252, 2010 WL 308979, at *6 (E.D. Pa. Jan. 27, 2010) (collecting cases; stating that development of the record by the ALJ was inadequate where the plaintiff was unrepresented and the ALJ made no efforts to obtain medical records from any of the treating sources identified at the hearing).  Accordingly, we hold that Plaintiff was not prejudiced by proceeding unrepresented at the hearing and that the hearing did not evidence unfairness warranting remand.  *See Livingston*, 614 F.2d at 345.

### B.      Treatment of Medical Opinion Evidence

Plaintiff next argues that the ALJ erred in attributing "great weight" to the medical opinion of Dr. Elizabeth Kamenar, the state agency physician, in determining Plaintiff's RFC.  Plaintiff highlights that, when Dr. Kamenar reviewed Plaintiff's file, the only record evidence pertained to Plaintiff's hearing loss.  As Dr. Kamenar did not consider Plaintiff's fibromyalgia, degenerative joint disease, and arthritis – impairments which the ALJ found to be severe – Plaintiff contends that her opinion was stale and that the ALJ improperly relied on it.

Here, Dr. Kamenar completed the Physical RFC Assessment on April 28,

15

2009, relevantly finding that Plaintiff had not established any exertional, postural, or manipulative limitations.  (Tr. 180-81). The ALJ stated that he gave "great weight" to Dr. Kamenar's opinion, explaining that the residual functional capacity assessment performed by Dr. Kamenar "was consistent with the claimant's subjective complaints and the medical evidence of record prior to her initiating treatment for knee and joint pain."  (Tr. 37).

We find that Plaintiff's argument in this regard lacks substantive merit. Importantly, although the ALJ stated that he was attributing great weight to the opinion of Dr. Kamenar, it is clear from his RFC determination that he additionally credited the opinions of Plaintiff's examining and treating physicians (and also Plaintiff's own testimony).  As described *infra*, the ALJ restricted Plaintiff to sedentary work, delineating specific limitations regarding lifting, carrying, sitting, standing, and walking.  *See* discussion *infra* Part I.  Had the ALJ relied solely on the opinion of Dr. Kamenar, who assessed Plaintiff with hearing limitations only, he would not have formulated such a restrictive RFC involving exertional and postural limitations.  In other words, despite the ALJ's statement concerning the weight attributed to the state agency physician's opinion, his ultimate RFC determination indicates that he also credited other medical evidence of record.  We see no error in the ALJ's evaluation of the medical opinion evidence.

16

### C.   Vocational Testimony

Next, Plaintiff argues that the VE's testimony was fundamentally flawed. She asserts that, after concluding that a 10-pound lifting restriction would restrain Plaintiff to sedentary work, the VE listed jobs that were not at the sedentary exertional level, namely, assembler of small parts, cashier II, and garment inspector.  Plaintiff cites the Dictionary of Occupational Titles ("DOT") to support her contention that these jobs are rated at the light exertional level.

As stated by the Social Security Administration,

> [o]ccupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT.  When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled.  At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

SSR 00-4p at *2.  As to exertional level specifically, there may be instances where a VE classifies the exertional demands of an occupation differently than the DOT, for example, where reliable occupational information indicates a different classification.  *See id*. at *3.  However, in general, the regulatory definitions of exertional levels are controlling.  *See id.*  In any event, inconsistencies between VE

testimony and DOT information "need not be fatal if substantial evidence exists in other portions of the record that can form an appropriate basis to support the result." *Rutherford v. Barnhart*, 399 F.3d 546, 557 (3d Cir. 2005) (citing *Boone v. Barnhart*, 353 F.3d 203, 209 (3d Cir. 2004)).

Here, in the ALJ's first (and least restrictive) hypothetical question to the VE, the ALJ described the hypothetical claimant as capable of lifting and carrying "10 pounds occasionally, [and] two or three pounds more frequently." (Tr. 77). In view of this restriction, the VE concluded that such claimant would be limited to sedentary work. *Compare* DICTIONARY OF OCCUPATIONAL TITLES 979.687-034, Appendix C, "Sedentary Work" (exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently), *with id.* "Light Work" (exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly). The VE then suggested that the following jobs would be appropriate: cashier II, assembler of small parts,[8] and garment inspector, identifying each as involving sedentary work, and the first as also performed at the light exertional level. However, as Plaintiff correctly observes, each job identified by the VE is categorized by the DOT as involving

---

[8] The DOT does not contain an occupation entitled assembler of small parts. However, it does contain definitions for assembler of small products I and II. We will assume that the VE was referring to one of these occupations in his testimony.

light exertion.  *See* DICTIONARY OF OCCUPATIONAL TITLES 789.687-070 "Garment Inspector" (light work; exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly); *id.* 211.462-010 "Cashier II" (same); *id.* 706.684-022 "Assembler of Small Products I" (same); *see also id.* 739.687-030 "Assembler of Small Products II" (same).  The VE did not identify or explain these apparent conflicts at the hearing, and when asked by the ALJ whether his testimony was consistent with the DOT, answered affirmatively.  (Tr. 81).  Furthermore, although the ALJ stated in his decision that the VE's testimony was consistent with the information contained in the DOT, he did not identify or clarify the apparent discrepancy in exertional levels.  (Tr. 38).

Upon review of the record, the Court is unable to determine whether the ALJ and VE erred by presuming that the identified occupations required only a sedentary level of exertion under the DOT, or whether the ALJ and VE intended to assert that Plaintiff could perform the delineated jobs despite her sedentary limitations.  Accordingly, there is a lack of substantial evidence to support the ALJ's finding that a claimant who can only lift 10 pounds could perform the jobs identified by the VE, all of which involve exerting force up to 20 pounds per the DOT definitions.  *See Boone*, 353 F.3d at 207-08 (holding that the VE's testimony did not provide substantial evidence of a significant number of jobs in the economy

because, among other things, the jobs identified by the VE were rated as semiskilled occupations while the plaintiff was limited to unskilled employment or had physical requirements beyond the plaintiff's limitations); *Rosser v. Chater*, No. 94-5620, 1995 WL 717449, at *1-2 (E.D. Pa. Dec. 4, 1995) (remanding where the ALJ credited testimony of the VE that certain jobs involved sedentary exertion but the DOT provided for a level of exertion greater than sedentary); *see also Rivera-Negron v. Astrue*, No. 12-3837, 2013 WL 5823713, at *5 (E.D. Pa. Oct. 30, 2013) (remanding where the ALJ did not explain why he concluded that the plaintiff, who did not speak English, could perform jobs that the DOT described as requiring Level 1 (English) Language Development).  On this basis, we will remand this matter for further proceedings.

### D.    Credibility Determination

Lastly, Plaintiff asserts that the ALJ's credibility determination was flawed, arguing that he inadequately explained which medical evidence was inconsistent with her testimony.  Plaintiff notes that the ALJ deemed her to be "generally credible" but nonetheless determined that "the medical evidence does not establish that she is as limited as she has alleged, particularly with regard to her ability to perform a range of sedentary work[.]"  (Tr. 37).  She challenges that, pursuant to SSR 96-7p, an ALJ must state "specific reasons for the finding on credibility,

supported by the evidence in the case record" and must specifically indicate the weight attributed to the claimant's statements and the reasons for that weight. SSR 96-7p; *see Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 433 (3d Cir. 1999) (stating that, in assessing credibility, an ALJ must indicate which evidence he has rejected and which he has relied upon).

Notably, Plaintiff's argument asserts a failure to meet the regulatory standard for evaluating subjective testimony. She does not, however, identify any substantive error in the ALJ's credibility assessment or explain how the determination prejudiced her. Indeed, in view of the record as a whole, we find no prejudicial error in the ALJ's analysis. Based on the ALJ's RFC assessment, it is evident that he credited much of Plaintiff's testimony. For instance, the sit/stand and walking limitations incorporated into the RFC determination directly mirror Plaintiff's averments that she can sit for 20 minutes, stand for 15-20 minutes, and walk for the equivalent of a block. (Tr. 68). Hence, even if the ALJ should have more explicitly explained his credibility determination, we find any such error to be harmless.

## IV.   CONCLUSION

For the reasons herein stated, the Court shall remand this matter for further

proceedings consistent with this Memorandum.  An appropriate order shall issue.